## HUDSON - HOUSTON LUMBER CO. v. PARKS et al.

No. 11520—Opinion Filed May 29, 1923.

### 1. Mechanics' Liens—Action to Enforce—Statute.

In an action to enforce a mechanic's lien, the practice, pleading, and proceedings in such action shall conform to the rules prescribed by the Code of Civil Procedure as far as the same may be applicable; and in case of action brought, any lien statement may be amended by leave of the court in furtherance of justice as pleadings may be in any matter, except as to the amount claimed.

### 2. Same—Rights of Subcontractors and Laborers—Knowledge of Owner.

Under section 3864, Rev. Laws 1910, providing that: "Any person who shall furnish any such material or perform such labor as a subcontractor, or an artisan, or a day laborer in the employ of the contractor may obtain a lien * * *," no privity or knowledge on the part of the owner is necessary.

### 3. Same—Material Furnished Lessee—Liability of Premises.

Where the owner leases certain lots under a lease contract containing a provision that the lessee "is to take the premises above described and is to make all necessary repairs and alterations as is necessary to meet his convenience, and is to build the house on lot 5 back until it is the same length as the one on lot 6. And it is further understood and agreed that the party of the second part is to leave all this repair and work at the time of the termination of his tenancy"—"a materialman furnishing material to the lessee to be used by him in making such improvements is not entitled to a lien on the premises of the owner under and by virtue of section 3864, Rev. Laws 1910, where the lessee fails to pay a balance due the materialman for such material, the owner not being indebted at any time to the lessee for the making of such improvements.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Carter County; Thos. W. Champion, Judge.

Action by Hudson-Houston Lumber Company against D. W. Parks et al., to enforce mechanic's lien. Judgment for defendant Dillard. Plaintiff brings error. Affirmed.

Dolman & Dyer, for plaintiff in error.

Rutherford Brett and Eddleman & Sneed, for defendants in error.

Opinion by PINKHAM, C. This action was brought in the district court of Carter county, Okla., by Hudson-Houston Lumber Company, a corporation, as plaintiff, against D. W. Parks and the Northwest Specialty Company, William Hutchinson, trustee, J. H. Dillard and First National Bank of Ardmore, Okla., T. F. Yount, and Clyde Williams, as defendants, on the 24th day of June, 1918, upon an account for lumber and supplies furnished by the plaintiff to D. W. Parks and the Northwest Specialty Company (that being the name under which D. W. Parks was trading) to recover the sum of $2,279.90 against the defendant D. W. Parks, and seeking the foreclosure of a materialman's lien upon certain real estate in the city of Wilson, Carter county, Okla.,

of which the defendant J. H. Dillard was the owner.

The parties held the same relation in the trial court as they do here, plaintiff in error being plaintiff below, and defendants in error being defendants below, and will be referred to as plaintiff and defendants, as in the court below.

The defendants First National Bank of Ardmore, T. F. Yount, and Clyde Williams disclaimed any interest in the property involved in the action. The defendant D. W. Parks made no appearance. The defendant William Hutchinson, trustee in bankruptcy for defendant D. W. Parks, a bankrupt, was served with summons, but made no appearance. The defendant J. H. Dillard joined issues with the plaintiff, and a trial was had before a jury on October 3, 1919.

At the conclusion of the testimony, the court instructed the jury to return a verdict in favor of the plaintiff, the Hudson-Houston Lumber Company, and against the defendant William Hutchinson, trustee in bankruptcy of the estate of D. W. Parks, bankrupt. The jury returned a verdict finding for the plaintiff as against defendant trustee in bankruptcy and fixed the amount of plaintiff's recovery at $2,279.90, with interest from the 10th day of December, 1917, at the rate of six per cent. per annum, and a $250 attorney fee. The jury was discharged by the court and the cause continued for argument to the court on the question of whether the plaintiff was entitled to a lien on the premises of the defendant, J. H. Dillard, until the 8th day of October, 1919.

On the 8th day of October, 1919, counsel for plaintiff asked the court for permission to amend the lien statement so as to show that J. H. Dillard was the owner of the property and D. W. Parks was the contractor. This motion was overruled and excepted to by plaintiff. On the 9th day of October, 1919, the court rendered judgment against defendant W. M. Hutchinson. as trustee in bankruptcy of the estate of D. W. Parks, a bankrupt, in accordance with the verdict of the jury.

Upon the question of a lien against the property of the defendant J. H. Dillard for the payment of the judgment rendered, the court found that the lien statement filed by p'aintiff was insufficient in law to bind the property of the defendant J. H. Dil'ard, or to create a lien against said property, which was excepted to by plaintiff.

The court further found that the material furnished by the plaintiff was used for the erection and repair of buildings on lots of defendant J. H. Dillard, being lots 5 and 6 in block 31, in the town of Wilson, Carter county, Okla.

The court further found that the specialty company mentioned herein and D. W. Parks were one and the same; in other words, that Parks was the specialty company. The court further found that there was no privity of contract between the plaintiff, Hudson-Houston Lumber Company, and the defendant J. H. Dillard, and that the plaintiff was not entitled to a lien, or to foreclose the same against the property of the defendant J. H. Dillard, as prayed for. Plaintiff excepted. Judgment was rendered in accordance with said findings, to which the plaintiff duly excepted. Motion for new trial was filed and overruled, to which plaintiff excepted. Plaintiff appeals.

It appears from an examination of the record that the defendant Dillard was the owner of certain lots in the town of Wilson, and on the 28th day of April, 1917, the following agreement was entered into between J. H. Dillard and D. W. Parks:

"Know All Men by These Presents: That this agreement made and entered into on this the 28th day of April 1917, by and between J. H. Dillard, party of the first part and the Northwestern Specialty Company, party of the second part, witnesseth:

"That for and in consideration of the sum of $1,920 to be paid as follows: $80 per month payable in advance on the beginning of each month during the time for which this contract runs. That party of the first part grants, leases, and lets unto the party of the second part for a period of two years from the 1st day of November, 1917, the following described property, to wit: All buildings and the use of lots 5 & 6, in block 31, in the town of New Wilson, Oklahoma, said buildings now located on said lots. is further understood and agreed that the party of the second part is to take the premises above described and is to make all necessary improvements to meet his convenience, and is to build the house on lot 5 back until it is the same length as the one on lot 6. And it is further understood and agreed that the party of the second part is to leave all this repair work at the time of the termination of the tenancy. It is further understood by the parties hereto that the party of the second part is to have the right to place a plate glass front in both of the buildings as they now stand, and is to have the right to remove the glass, if the parties hereto cannot agree on the price at the time of the termination of his tenancy.

"It is understood that this contract does not annul the contract between the parties

hereto on lot 6 which is now in operation. It is further understood that the party of the second part is not responsible for an unavoidable accidents, acts of nature, or acts of God.

"It is further agreed by the parties hereto that the party of the second part is to have an option on the above described property at a price to be agreed upon by and between the parties hereto at or prior to the expiration of this lease. * * *"

There is evidence in the record that from September 24th to November 28, 1917, the defendant Parks purchased of the plaintiff some $4,000 worth of lumber and the same was delivered to Parks on the lots of the defendant Dillard, and that Parks used the lumber in the erection and construction of a building on said lots.

It also appears that prior to, and at the time of, the execution of the said agreement, and at the time the lumber sold by the plaintiff was delivered on the lots in question, Parks conducted on the said lots a confectionery, restaurant, and pool-hall business.

There is evidence in the record that the defendant Dillard, the owner of the land, knew that the plaintiff was furnishing lumber and materials to go into the building that Parks was constructing, and that he made no objection to the erection or construction of the building.

There is also evidence in the record that Parks from time to time made payments to the plaintiff on the lumber account, but at some time, not shown in the record, Parks was adjudged a bankrupt.

It also appears that on the 28th day of December, 1917, plaintiff filed its lien statement with the court clerk of Carter county, and that on the 11th day of January, 1918, plaintiff served notice on the defendant Dillard of the filing of said lien statement.

Section 3873, Rev. Laws 1910, is in part as follows:

"The practice, pleadings and proceedings in such actions shall conform to the rules prescribed by the code of civil proceedure as far as the same may be applicable, and in case of action brought any lien statement may be amended by leave of the court in furtherance of justice as pleadings may be in any manner, except as to the amount claimed."

In an early case, El Reno Light Co. v. Jennison, 5 Okla. 759, 50 Pac. 144, it is said in the opinion:

"We hold the proper construction of this act to be that a mechanic's lien may be amended in any manner where for similar reasons a pleading could be amended; and it may be done where the justice of the cause warrants it, either before or after judgment. The amendment was properly allowed and cured all the defects in the original statement."

We think the court should have allowed the plaintiff to amend his lien statement.

Another assignment is:

"For error in law in ruling that plaintiff must establish privity of contract with J. H. Dillard, owner of the property."

Section 3862, Rev. Laws 1910, provides for a lien where work or labor is performed, or material furnished under a contract "with the owner of any tract or piece of land". That section contemplates actual privity with the owner of the land on which a lien was to be enforced. Plaintiff, however, was not claiming a lien, and could not under the admitted facts, by virtue of section 3862. Plaintiff claimed its lien under section 3864, Rev. Laws 1910. Section 3864 provides in part that:

"Any person who shall furnish any such material or perform such labor as a subcontractor * * * may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor, for the amount due him for such material and labor. * * *"

There is no dispute as to the fact that the plaintiff complied with the subcontractor section—3864—by filing the statement within 60 days, and by serving the proper notice on the owner of the property.

In the case of Ferguson v. Brown Lbr. Co., 14 Okla. 148, 77 Pac. 184, where action was brought to enforce a lien for materials furnished to a contractor without notice to, and with no privity of contract with, the owners of the property, the court said:

"Where an action is brought to enforce a materialman's lien for material furnished under a subcontract with the contractor, it is not necessary to allege or prove that the owner of the building knew of such party furnishing lumber."

And in the body of the opinion in that case, it is said:

"It is under this latter section (now section 3864) the material was furnished in this case, by which section no privity or knowledge of the owner of the building is made necessary."

If the plaintiff was entitled to a lien on the defendant Dillard's property, it was because of the provisions of section 3864, Rev. Laws 1910, and it was not necessary for

privity of contract with the owner to be shown.

The decisive question in this case, however, and the one to which all the other assignments of error are directed, is whether, in view of the facts disclosed in the record, the plaintiff is entitled to a lien on the premises of the defendant Dillard.

The section of the statute under which the plaintiff claims the right to a lien upon the property of the defendant Dillard is section 3864, Rev. Laws 1910, which reads in part as follows:

"Any person who shall furnish any such material or perform such labor, as a subcontractor may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner and to the same extent as the original contractor, for the amount due him for such labor and material * * * by filing with the clerk of the district court of the county in which the land is situated within sixty days after the date upon which material was last furnished, or labor last performed under such subcontract a statement verified by affidavit setting forth the amount due from the contractor to the claimant, and the items thereof, as nearly as practicable, the name of the owner, the claimant and a description of the property upon which a lien is claimed, and by serving a notice in writing upon the owner of the land or improvements or both * * * provided, further that the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he contracted to pay the original contractor. * * *"

Before it can be determined whether a subcontractor is entitled to a lien on the property of the owner, it is necessary to consider the character of the contract between the owner and contractor, and to discover whether the owner was indebted to the contractor in any amount.

"As a general rule the right of subcontractors, materialmen, and workmen to a lien is controlled by the terms of the original contract; they are chargeable with notice of the terms of such contract." (Cyc. 27-93).

In the case of Foster v. Swaback, 58 Ill. App., p. 58, the court quotes from Phillips on Mechanics' Liens, as follows:

"The allowance of a lien to a subcontractor is a special privilege, and it is not unreasonable to require him to look to the principal contract to ascertain whether it is such as to justify him in becoming a contractor under it."

In Blythe v. Poulty, 31 Cal. 234, it is said:

"The right of a materialman to a lien on the land and building as against the owner for materials furnished the contractor, depends for its existence upon the fact of an indebtedness from the owner to the contractor at the time, and subsequent to the notice."

Assuming that Parks was the original contractor, it is clear that by the terms of his lease contract with Dillard, by virtue of which he made improvements on the premises of Dillard, he had no lien of any character on Dillard's property, for the reason that Dillard owed him nothing whatever for the making of the improvements. And for the further reason that Parks had no contract with Dillard whereby Dillard was obligated to him in any sum whatever for the improvements made by him on the land owned by Dillard. Parks enlarged a building he was already occupying, for his own convenience, agreeing to leave it on the premises at the expiration of his lease. Dillard not having contracted to pay Parks any sum whatever for making the improvements on his premises and not being indebted in anywise to Parks, the original contractor, there was consequently no fund in Dillard's hands due and owing Parks.

In the case of Hoggson Bros. v. Dickason-Goodman Lbr. Co., 81 Okla. 31, 196 Pac. 686, it is held in the second paragraph of the syllabus:

"Where a contract is made for the erection of a building, the contract price for the erection thereof constitutes a fund from which the subcontractor and those furnishing material to, or performing labor for, them are to be paid for such material and labor, and it is the duty of the owner and principal contractor to see that such fund is properly distributed to the persons entitled thereto."

There having been no such fund in the hands of Dillard, the plaintiff was not entitled to a lien upon Dillard's property.

Although a mechanic's lien law is to be liberally construed, and is regarded as a favorite of the law, a statute cannot be so extended as to cover cases not within its provisions. To charge the premises of the defendant Dillard would be equivalent to saying that an owner may not consent to the erection of an improvement on the leased land, made by the tenant at his own cost and convenience, and to be left upon the premises at the expiration of his lease, without rendering the owner liable for the cost incurred.

An examination of the record convinces us that the plaintiff, in furnishing the material to D. W. Parks, the lessee of Dillard,

the owner, did so in reliance upon the ability of D. W. Parks to pay for the same, and did not consider the premises of Dillard in any way as security therefor. J. L. Long, manager for plaintiff, among other things, testified as follows:

"This particular account of the Southwestern Specialty Company at December first or about that time, it shows here that date, was transferred to the Northwestern Specialty Company. I think if my memory is correct, that the Northwestern Specialty Company is the first account during these memorandums. The first item here is charged to the Northwestern Specialty Company. I notice the first charge ticket in February was to the Southwestern Specialty Company; later on they got to calling it the Northwestern Specialty Company, then we of course, charged it to the Northwestern Specialty Company, thinking possibly he had changed the firm. We didn't ask any questions about it and merely billed it as they told us to. Q. Do these various books show the entire account of D. W. Parks for lumber and materials furnished D. W. Parks either as D. W. Parks the Northwestern Specialty Company, Southwestern Specialty Company, or Parks Pool Hall? A. Yes, sir."

As tending to show that the plaintiff's material was not furnished on the security of the premises of Dillard, it is disclosed in the record that the last item of material was in November, 1917, and this action was not brought until June 24, 1918, and at a time after Parks had been adjudged a bankrupt, the exact time not appearing in the record.

For the reasons heretofore stated in this opinion, the judgment of the trial court, holding that the plaintiff was not entitled to a lien on the premises of the defendant J. H. Dillard, should be affirmed.

By the Court: It is so ordered.